IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERNESTINE CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 13 C 1872 |
| v. | ) |
| | ) Magistrate Judge |
| CAROLYN W. COLVIN,[1] | ) Jeffrey T. Gilbert |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Ernestine Clark ("Claimant") brings this action under 42 U.S.C.§ 405(g) seeking reversal or remand of the decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits under Title II of the Social Security Act. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1 for all proceedings, including entry of final judgment. ECF No. 7.

This matter is before the Court on the parties' cross-motions for summary judgment. ECF Nos. 22, 31. For the reasons discussed herein, the Commissioner's motion for summary judgment (ECF No. 31) is denied. Claimant's motion for summary judgment (ECF No. 22) is granted, and this matter is remanded to the Social Security Administration ("SSA") for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin automatically is substituted as the Defendant in the case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Claimant filed an application for disability insurance benefits on May 16, 2006, alleging a disability onset date beginning August 26, 2005. R. 403. The SSA initially denied the application on September 26, 2006, and upon reconsideration on June 20, 2007. *Id.* Claimant filed a timely request for an administrative hearing on July 10, 2007, which was held before an administrative law judge ("ALJ") on February 12, 2009. *Id.* The ALJ issued a written decision denying Claimant benefits on March 17, 2009, which Claimant appealed to the district court. *Id.* The district court remanded the case to the Commissioner for further administrative proceedings. *Id.* A second hearing was held before an ALJ on October 31, 2012. *Id.* Claimant personally appeared and testified at the hearing, and she was represented by counsel. *Id.* Ashok Jilhewar, M.D., a medical expert, Jeffrey W. Lucas, a vocational expert, and Joseph T. Clark, Claimant's husband, also appeared and testified at the hearing. *Id.*

The ALJ issued a partially favorable written decision on November 29, 2012, finding Claimant disabled under the Social Security Act from August 26, 2005 through September 5, 2006, but not disabled thereafter. *Id.* at 399-424. At step one of the required five-step sequential evaluation process for determining whether an individual is disabled, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of August 26, 2005. *Id.* at 406. At step two, the ALJ found that, from August 26, 2005 through September 5, 2006, Claimant had the severe impairment of persistent inflammation of the hands and wrists. *Id.* at 407. At step three, the ALJ determined that, for that time period, Claimant medically equaled the criteria of section 14.09A of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, and 404.1526). *Id.* The ALJ therefore found Claimant to be disabled

2

within the meaning of the Social Security Act from August 26, 2005 through September 5, 2006. *Id.* at 408.

The ALJ determined that, as of September 6, 2006, Claimant had the severe impairments of obesity, fibromyalgia, bilateral degenerative joint disease of the knees, and degenerative disc disease of the cervical and lumbar spines. *Id.* As of that date, however, the ALJ concluded that Claimant no longer had an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1594(f)(2)). *Id.* at 410. The ALJ found that Claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that Claimant could never climb ladders, ropes, or scaffolds; could only occasionally climb ramps and stairs; could occasionally balance, stoop, kneel, crouch, and crawl; and could frequently but not constantly handle, reach, and feel bilaterally. *Id.* The ALJ further found that Claimant was unable to perform her past work, but that jobs existed in significant numbers in the national economy that Claimant could perform, and therefore found that Claimant was not disabled under the Social Security Act. *Id.*

Claimant did not file exceptions to the ALJ's decision and the Appeals Council did not assume jurisdiction, leaving the ALJ's decision as the final decision of the Commissioner. ECF No. 1 at 2. Claimant seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ANALYSIS

Claimant argues that this matter should be reversed or remanded because (1) the ALJ erred in evaluating the medical opinions of record; (2) the ALJ erred in assessing her RFC; and (3) the ALJ erred in evaluating her credibility. ECF No. 22. at 1. After reviewing the parties'

3

briefs and the administrative record, the Court agrees with Claimant that the ALJ erred in evaluating the medical opinions of record. Therefore, remand is appropriate.

**1. The ALJ did not properly weigh the medical opinion of Claimant's treating physician.**

Claimant first argues that the ALJ erred in rejecting the medical opinion of Dr. Judy Law, Claimant's treating physician, who began treating Claimant on September 28, 2005 and saw her approximately 27 times over the next seven years. ECF No. 22 at 2, 9. During the course of her treatment, Dr. Law provided multiple medical opinions regarding Claimant's ability to work which suggest a gradual deterioration in Claimant's condition and, ultimately, support a finding that Claimant is disabled. The ALJ, however, gave little weight to Dr. Law's opinions and instead relied on the opinion of the non-examining medical expert, Dr. Ashok Jilhewar, in determining Claimant was not disabled. The Court agrees with Claimant that the ALJ did not articulate sufficient reasons for rejecting Dr. Law's opinions. Remand is therefore appropriate.

Social Security regulations direct an ALJ to generally give more weight to a claimant's treating physicians than the ALJ gives to non-treating physicians such as medical experts and state agency consultants. 20 C.F.R. § 404.1527(c); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). That is because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's impairments and "bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 404.1527(c). Indeed, if the treating physician's opinion is well-supported and consistent with other substantial evidence in the record, the regulations direct an ALJ to give that opinion controlling weight. *Bauer*, 532 F.3d at 608 (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006).

Here, the ALJ did not give controlling, or even great, weight to Dr. Law's opinions despite Dr. Law submitting multiple medical assessments that generally support Claimant's disability application. In an Arthritic Report dated April 5, 2007, for example, Dr. Law stated that Claimant had pain, tenderness, stiffness, and swelling over her hands, wrists, elbows, knees, and lower back, as well as fatigue. R. 308. Shortly thereafter, on July 26, 2007, Dr. Law completed a Physical Capacities Evaluation in which she opined that Claimant could sit for six or more hours per day and stand and/or walk for two hours per day. R. 335. In addition to these findings, however, Dr. Law noted that Claimant's pain and side effects from her medication constituted a "significant handicap with sustained attention and concentration," which eliminated Claimant's ability to perform "skilled work tasks." R. 337.

Dr. Law's later assessments suggest Claimant's impairments worsened over time. In February 2009, for example, Dr. Law wrote that Claimant's "pain had been totally disabling to her" and that, as a result, she could not hold a full-time job and her return to work date was "indeterminate." R. 398. In November 2010, Dr. Law opined Claimant was physically capable of sedentary work activity, but added that Claimant suffered "poor concentration" and "severe side effects from her medications." R. 743. In November 2011, Dr. Law reiterated her opinion that Claimant was physically limited to sedentary work and suffered "drowsiness from medications" and "poor concentration." R. 752. And, in October 2012, Dr. Law stated that, despite having "been treated with [a] reasonable number of physical therapies and multiple medications since 2005," Claimant nonetheless "still has daily disabling pain in her neck, arm and hands. She is totally disabled from any gainful employment." R. 758.

Dr. Law's multiple functional capacity assessments make clear her opinion that Claimant's pain, combined with side effects from her medications, precluded her from working

5

as of at least 2009. The ALJ, however, afforded "little weight" to Dr. Law's opinions, stating that they "are wholly unsupported by Dr. Law's treatment notes, which essentially merely repeat the claimant's symptoms." R. 416. This rationale has no support in the record. The bulk of Dr. Law's progress notes contain objective physical examination findings in addition to documentation of Claimant's subjective complaints. Moreover, Dr. Law's physical examination findings contain a number of notations of, among other things, tenderness, swelling, and fibromyalgia trigger points. *See, e.g.*, R. 315, 317, 357, 359, 693, 698, 701, 706, 761. The ALJ failed to discuss, or even acknowledge the existence of, these objective findings. The ALJ's disregarding of Dr. Law's medical opinions because they are "wholly unsupported" and "merely repeat the claimant's symptoms" is patently wrong and cannot stand.

The ALJ also gave little weight to Dr. Law's medical opinions because she determined they were inconsistent. The ALJ did not expound on this observation, however, and it is not clear to the Court how Dr. Law's opinions are inconsistent. Dr. Law's later assessments, in particular, consistently note Claimant suffers from fibromyalgia, depression, degenerative disc disease, pain and swelling, poor concentration, and severe side effects from a multitude of medications. That Dr. Law's opinions grew more restrictive over time does not, as the Commissioner seems to suggest (ECF No. 32 at 11-12), necessarily render her opinions inconsistent. Dr. Law treated Claimant over a seven-year period, during which she noted a gradual deterioration in Claimant's condition. The ALJ should have considered the possibility that Claimant's condition worsened before determining that Dr. Law's opinions warranted little weight. *See Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013) (remanding where the ALJ failed to consider whether the claimant's condition deteriorated). That is particularly true in light of the length and frequency with which Dr. Law treated Claimant, as well as both Claimant's and

6

her husband's testimony that Claimant grew worse over time. *See, e.g.*, R. 451 ("Well, the condition has worsened, you know, I mean really, really bad . . . ."). The ALJ's failure to do so warrants remand.

Lastly, the Commissioner argues that "the ALJ's rationale for accepting Dr. Jilhewar's opinion . . . may reasonably be imputed to and support the ALJ's decision not to give great weight to Dr. Law's opinions." ECF No. 32 at 12. As set forth below, the ALJ should not have relied on Dr. Jilhewar's opinion. The Commissioner's argument is unpersuasive.

## 2. The ALJ's decision to afford Dr. Upadhyay's opinion no weight is not supported by substantial evidence.

Claimant next argues that the ALJ erred in rejecting the opinion of Dr. Naresh Upadhyay. ECF No. 22 at 12. Dr. Upadhyay performed an independent medical examination of Claimant on May 3, 2011, after which he concluded Claimant was unable to work, stating, "In my opinion, Ernestine Clark is currently not capable of working . . . in any occupation because of safety issues as a result of being on multiple medications having a sedative effect." R. 730. The ALJ, however, afforded no weight to Dr. Upadhyay's opinion. The ALJ's decision to afford Dr. Upadhyay's opinion no weight is not supported by substantial evidence. Remand, therefore, is appropriate.

In rejecting Dr. Upadhyay's opinion, the ALJ first notes that Claimant "had intact memory and no problems relating at the [September 2006] consultative examination." R. 415. But Dr. Upadhyay's conclusion that Claimant cannot work did not rely at all on any alleged memory problems or difficulty relating to others Claimant may have experienced. He instead opined Claimant cannot work because the side effects of her medication cause her to be drowsy. R. 730. Claimant's memory and social functioning are simply unrelated to any drowsiness she may experience as a result of her medications. The Court thus cannot see how the September

7

2006 consultative examination findings are at all relevant to Dr. Upadhyay's May 2011 opinion. Even if Claimant's memory and social functioning were relevant to Dr. Upadhyay's opinion, however, the September 2006 note upon which the ALJ relied in determining Claimant suffered no impairment in those faculties is extremely remote from Dr. Upadhyay's May 2011 opinion. The ALJ's having to wade through five years of medical records in an attempt to support her position demonstrates the sort of "cherry-picking" that does not withstand scrutiny. *Wilson v. Astrue*, 836 F.Supp.2d 816, 820 (7th Cir. 2010) (the ALJ "cannot simply cherry-pick facts that support a finding of non-disability") (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

The ALJ also appears to conclude that Dr. Upadhyay's opinion warrants no weight because Claimant's medical records lack evidence of serious medicinal side effects. See R. 415 (contrasting Dr. Upadhyay's conclusion with Dr. Law's April 2007 treatment note, which the ALJ interpreted to mean that Claimant's "only side effect was weight gain from prednisone"). As set forth below, that conclusion is patently wrong. The record is replete with Claimant's complaints of drowsiness, weight gain, and other side effects from her plethora of medications. *See, e.g.*, R. 309, 336, 337, 352, 370, 373, 391, 689, 694, 697, 730, 739.

The ALJ's additional reasons for rejecting Dr. Upadhyay's opinion are similarly unpersuasive. For example, the ALJ cites Claimant's ability to "be active in chores" and "go out with friends" as being inconsistent with Dr. Upadhyay's conclusion that the sedative effects of Claimant's medications pose significant safety risks at work. R. 415. This conclusion, too, lacks support in the record. The ALJ emphasizes that in November 2007, Claimant reported to Dr. Law she was "obsessed with cleaning" because she needed to keep busy around the house. One isolated statement five years prior to the hearing is not "substantial evidence" that adequately supports the ALJ's conclusion. Even if Claimant was doing heavy housework in 2007, as

8

previously noted, records from Dr. Law indicate that Claimant's condition worsened over time. The ALJ failed to consider that possibility. Nor does Claimant's October 2012 statement to Dr. Law that she "still does light work at home" salvage the ALJ's reasoning. The Seventh Circuit has repeatedly held that light housework does not equal the ability to work full time. *See, e.g., Carradine v. Barnhart*, 360 F.3d 751, 755-56 (7th Cir. 2004).

Lastly, the Commissioner argues that the ALJ appropriately disregarded Dr. Upadhyay's opinion because it was inconsistent with Dr. Jilhewar's opinion, upon which she was entitled to rely. ECF No. 32 at 12-13. As stated above and set forth in more detail below, the ALJ erred in relying on Dr. Jilhewar's opinion. The Commissioner's argument, therefore, is unpersuasive.

### 3. The ALJ erred in adopting the opinion of the medical expert.

The crux of the Commissioner's arguments in response to Claimant's motion for summary judgment is that the ALJ was correct in disregarding multiple medical opinions from Claimant's treating physicians – including one doctor who examined Claimant over the course of seven years – because the medical expert, Dr. Jilhewar, disagreed with the treating physicians. Dr. Jilhewar did not account for an entire line of evidence in formulating his opinion, however. Accordingly, neither his opinion nor the ALJ's reasoning that is based on his opinion are supported by substantial evidence.

During the hearing, Claimant testified that her medications cause her to become drowsy, sleepy, and irritable, and occasionally cause her to suffer memory loss. R. 435. Dr. Jilhewar testified that he did not believe Claimant suffered the severe side effects to which she testified. Specifically, Dr. Jilhewar testified that "[a]ny medication can cause side effects," but that he "did not see office visit notes of the symptoms of side effects" when he reviewed Claimant's medical records. R. 464. He further testified that, if Claimant's side effects were as severe as she

9

alleged, he would "expect that doctor to stop that medication, change that medication or reduce the dose of that medication." *Id.* Because Dr. Jilhewar "did not see such a documentation in the medical record," he did not credit Claimant's complaints. *Id.*

Based upon Dr. Jilhewar's testimony, the ALJ did not account for any of Claimant's alleged side effects when she formulated Claimant's RFC. The Commissioner concedes this point, but argues that, since Dr. Jilhewar determined Claimant's allegations of side effects from medication were not credible, the ALJ need not have factored any such side effects into Claimant's RFC. ECF No. 32 at 14-15.

The Commissioner's argument fails. The record is replete with evidence that Claimant suffered various side effects from her numerous medications. *See, e.g.*, R. 336 ("Patient claims to be tired"), 337 (Pain and/or medication side effects "constitutes a significant handicap with sustained attention and concentration"), 352 ("Cymbalta made her sleepy"), 370 ("Med[ication] made her sleepy"), 373 ("Drowsy all the time"), 391 ("Cymbalta – very nauseated . . . Can't take Flexeril, too sleepy"), 689 ("[Claimant] does not like the [weight] gain/drowsiness [from Lyrica]"), 694 ("Vicodin – drowsy"), 697 ("Poor concentration, drowsy if she takes Vicodin"), 739 ("[Patient] takes multiple medications . . . she is sleepy, feels depressed all the time").

Moreover, contrary to Dr. Jilhewar's assertion that Claimant's side effects could not be as bad as she alleged because her physicians did not adjust her medications, the record contains numerous notes of Claimant's physicians doing just that. In September 2006, for example, Dr. Law "tried to [reduce] prednisone to 5 [milligrams per day]," but Claimant's "pain [increased] to the point [that] she was numb." R. 310. Nevertheless, in April 2007, Dr. Law planned to "taper [Claimant] off" of prednisone due to "possible long term side effects," despite reiterating that Claimant "only [responded] to prednisone so far." R. 309. In October 2009, Dr. Law noted

10

Claimant did "not like the [weight] gain/the drowsiness" she suffered as a side effect of Lyrica, so she discontinued the Lyrica even though she "suffered a lot of pain." R. 689. In May 2010, Claimant reported to Dr. Law that Vicodin made her drowsy and requested she discontinue Vicodin and take ibuprofen instead. R. 694. Dr. Law chose not to do so, however, because Claimant was already taking Celebrex and she did not want Claimant taking an additional nonsteroidal anti-inflammatory drug. *Id.* And, in February 2010, Claimant switched from Lyrica to Savella. R. 733.

While Dr. Jilhewar testified he did not find Claimant's complaints to be credible, he also admitted that he was "not stating that she doesn't have a side effect," and that "the only reason" he found no side effects was because he "[did] not have medical record documentation at the present," and that "if such would be forthcoming, [his] opinion would be changing." *Id.* The Court can only assume that Dr. Jilhewar simply did not see the abundance of evidence, detailed above, documenting these side effects and medication modifications. While it is true that an ALJ is entitled to rely on a medical expert's opinion when there is no contrary evidence presented, *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), here, the ALJ was presented with the opinions of two examining physicians who stated, in no uncertain terms, that side effects from medication would interfere with Claimant's ability to work. As set forth above, the ALJ erroneously disregarded these physicians' opinions. The ALJ instead adopted the opinion of Dr. Jilhewar, which failed to account for the severe side effects both Claimant and her physicians described. In light of these errors, remand is appropriate.

**4. Upon remand, the ALJ should address Claimant's additional arguments as necessary.**

In addition to the above arguments, Claimant also contends that the ALJ erred in evaluating in her credibility. The Court already has determined that remand is appropriate here

11

and need not address Claimant's additional arguments in detail. The Court notes, however, that one of Claimant's arguments regarding the ALJ's credibility determination is that the ALJ erroneously relied on Claimant's receipt of long-term disability benefits from her employer to discredit her allegations. ECF No. 22 at 22. The Commissioner concedes this line of analysis was improper. ECF No. 32 at 8. Upon remand, the ALJ shall not consider Claimant's receipt of long-term disability benefits in evaluating Claimant's credibility. The ALJ also should consider Claimant's additional arguments as necessary, including Claimant's argument that the ALJ did not properly assess Claimant's RFC.

### III. CONCLUSION

For the reasons set forth above, Claimant's Motion for Summary Judgment (ECF No. 22) is granted, and the Commissioner's Motion for Summary Judgment (ECF No. 31) is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 6, 2015